Forrest v. Barrow Forrest v. Barrow Good morning and may it please the court. Elizabeth Rose for the appellant Mr. Olanda Forrest and I'd like to reserve three minutes for rebuttal. Very well. There are several issues on appeal, but they all relate to whether the district court improperly restricted Mr. Forrest's ability to prove Camden's liability for subjecting him to false arrest and excessive force in July of 2008. I'd like to focus on the district court's erroneous decision to grant partial summary judgment to Mr. Forrest's Section 1983 Deliberative Indifference Claim because that decision presents the most obvious example of the district court's error and is indefensible on this record. So here's the question that I have. The district court appeared to create a dichotomy in the claim that you made and separated the failure to supervise and the failure to supervise through Camden's internal affairs and on the other hand just the failure to supervise. And you argue that the dichotomy resulted in some evidence supporting your claim being excised. Can you sort of specify for us how we should think about that evidence that's been excised? I'm trying to figure out is it that it's such an unusual dichotomy set forth because who says it's a failure to supervise a particular department or is it that the way you framed it was broadly so that we should think of the evidence that should be allowed in more broadly? I think it's both. I think the district court improperly narrowed the claim by focusing only on the evidence of a failure to investigate, evidence of Camden's inaction after complaints had been made and the way it was handling or not following up on those complaints. And in doing so, the district court disregarded substantial evidence creating genuine issues of material fact showing that Camden had been warned of the need to be proactive in its management of police misconduct. And that specifically came from a 2002 report from the New Jersey Attorney General's office and also overlooked evidence from the chief of police that Camden essentially had a culture of indifference. I understand that the district court referenced internal affairs as supervisors at some point, whereas I understand your argument is that it was the chief of police and under New Jersey law it's the chief of police who supervises officers. Is that accurate? So our position is that the problems were so pervasive throughout the Camden Police Department that it wasn't just limited to internal affairs. So evidence that the chief of police believed that Camden had a culture of apathy and lethargy, had notice of problems that were going on. Is the chief of police a supervisor? Yes, I think the chief of police is the highest within the department. So a policy maker outside the department and within the chain of command of supervision. So if I may, I think there's a few pieces of evidence in particular that the district court disregarded and that showed that Camden was both on notice of problems with respect to officers violating citizen civil rights and also failed to act. And that starts with the pattern of misconduct that was evidenced through year after year after year. Citizens were complaining of misconduct, hundreds of complaints, at least 300 complaints each year from 2004 to 2008. Then you have the attorney general reports, the 2002 report that I mentioned already, that specifically calls for Camden to be proactive in managing police misconduct. It recommends that Camden take action to identify officers who are at risk of committing misconduct and also to interrupt patterns of inappropriate behavior. Then there's the 2006 report that specifically calls for Camden to have a system of accountability. Can we ascribe knowledge to the city of Camden on the basis of these investigations and these reports? Yes, I think that these... Were the reports submitted to the city of Camden and the governing officials in the city? Yes, these reports were commissioned or issued by the New Jersey Attorney General's office to the city of Camden and to its police department. And I guess your point is that in response the city of Camden did nothing to curtail this pattern of abuse. That's right. That's exactly right. Camden's on notice, it's told of the need to make changes and yet it fails to do so. So for example, Camden did not have any system of evaluating its officers, of performance reviews, and that was something that was specifically called out as something that it should do. Can you talk about the post-arrest evidence? There's obviously a dispute with you and your adversary about whether that should have been allowed in and if so, to what extent. Sure. So under this court's precedent, back with the city of Pittsburgh, those post-arrest complaints were absolutely relevant. They show an ongoing pattern of the city's inaction, both before Mr. Foerner's false arrest as well as after. And I think they also are relevant, as suggested in Beck, to showing that these officers' behavior was pursuant to that custom, that policy of inaction. So let me ask you this. There is a mention by the district court that your state law negligent supervision claim would go forth at the summary judgment stage. And I couldn't find any mention of it either in the instructions or at the motion in limine. So it's kind of out there and I wonder if you have a position as to what, if anything, can be done about it. I presume one argument could be you waived it. The other argument could be it's error not to have included it. So we think the district court erred by constructively dismissing that negligence claim at the motion in limine stage. In the summary judgment decision, the negligent supervision claim was clearly sustained. It was allowed to proceed. But yet when we get to the motion in limine hearing, the judge right off the bat says that there's one claim left in this case and that's the section 1983 claim. Was an objection raised at that hearing? An objection wasn't made at the motion in limine hearing, but we believe the issue was preserved because in the joint pretrial order, which had been signed by the magistrate judge, that negligence claim was included. Where in the joint pretrial order? It was rather cryptic. There's a reference in the joint pretrial order. I believe it's in the outlining of the legal issues that refers to the negligent supervision. I see general references to negligence as the issues. That's no specific discussion of whether this is 1983 or state. It just says negligence. Assume for the moment, the record says whatever it says, assume for a moment that it's not there. How would it be preserved? If it's not preserved, I think this court still has the ability to exercise its discretion to correct that error, dismissing a claim that the court had sustained, had found there were disputed issues of material fact. How was it plain error? It's extremely beneficial to Mr. Forrest because that negligence claim is obviously a lower culpability for the city. The mens rea is less than in a deliberate indifference. Well, I suppose at the very least you'd say it should be remanded because if he never ruled on it, it should have gone to the jury, right? I mean, it was in the case, then it wasn't in the case. There was no reasoning with regard to why it should no longer be in the case. That's absolutely right. Could you talk about the plain error analysis of the jury instruction, which I think you've conceded that that was not preserved, but it's an instruction on just absolutely the wrong theory of liability if there really is this trichotomy here. So why is that plain error? We think that's plain error for the reasons that you just suggested, that the district court had instructed the jury on a theory of liability that it had precluded Mr. Forrest from presenting evidence on. The court only allowed evidence on this failure to investigate theory and yet charged the jury as to a failure to supervise. So Mr. Forrest was left in a position where the jury can only find for him based on evidence that wasn't allowed to be introduced. Unless the court has further questions at this time, I'll reserve the rest of my time for rebuttal. Very well. May it please the court, Daniel Rybak on behalf of the city of Camden. I'm addressing points one and three regarding the summary judgment motion and the exclusion of evidence. Ms. Londar, the summary judgment motion and the exclusion of evidence. Ms. Londar can address, my colleague can address the negligence state law claim and the jury instructions. Thank you. Regarding the 1983 theories of liability, the plaintiff had a failure to supervise claim. Essentially it was failure to supervise in general, meaning on the streets, on a day-to-day basis, and then also a failure to investigate and essentially find out what these officers were doing beforehand. The judge granted summary judgment on the failure to supervise on a day-to-day basis, but did not on the failure to investigate through internal affairs. Who is responsible for supervising a police department such as this on a day-to-day basis? As far as on a day-to-day basis, that would be the chief of police. He's the head law enforcement officer, pursuant to NJSA 40A.11-18. Okay. I thought that that's exactly the appellant's argument here, that there was a total failure to supervise, and the chief of police is one of those who failed in his duties. Well, the chief of police, Chief Thompson, wasn't actually the chief of police until after Mr. Forrest's arrest. Well, whoever the chief of police was. I understand that. That individual, Deputy Chief Hargis, who was then Chief Hargis, was deposed. There was no evidence about what he failed to do in this case. There was mention about Attorney General's report saying that... Maybe it was what he failed not to do. Excuse me? You said there was no evidence of what he failed to do? Yes, there was no discovery undertaken about what Chief Hargis did or did not do. Regarding the Attorney General's reports, there wasn't a real warning system implemented by Internal Affairs at the time of Mr. Forrest's arrest. What if I said that if he had supervised the police, the pattern of misconduct that is complained about here would not have occurred? I would ask that what evidence do you have of supervision that would have prevented misconduct? And that was a problem the plaintiffs could not prove with summary judgment. They could not point to any specific activities that were not being done that would prevent it from being tested. In a lot of these city of Canton cases, people are trying to struggle to turn one incident into liability. Here we have 300 complaints over 6 years, 8 years. It's a long time. Whatever early warning system you have in place isn't working. They have to be on notice of this. And there are lots of other police departments across the country doing different things. I don't understand why the district court boiled this down to, well, they didn't have to have certain whiz-bang technology. There are lots of other departments, and Camden is way off at one end of the spectrum in terms of how many incidents, how bad, how often they are here. So I don't see how you can say we had an early warning system in place. That paper filed, but it wasn't doing anything. That's incorrect, because an early warning system, if there was a certain number of complaints against a particular officer, that officer was removed from the street. That didn't happen to be too often. There's very few people on the street based on what we've read. Well, there's a lot of officers in the city of Camden. There's 300 complaints, and they can range from anything from demeanor to being late, the whole gamut of complaints. You can't possibly be arguing that with all of these reports that were made available to the city of Camden that there wasn't an understanding that fundamental change had to happen. And I didn't concede that. I agree with that, and that did occur. There was a backlog of internal affairs cases. A new commander was put into place. The backlog was being reduced by Lieutenant Sosinovich. The old commander was removed. There was an early warning system in place, which these two officers... If the backlog's being worked on and all of it's being taken into account, why shouldn't we treat that as an admission that Camden acknowledges that there was a problem? Camden did acknowledge there was a problem with internal affairs. But for that to be the driving... This is internal affairs also I'm speaking about specifically, not anything else where the affairs are supervised. Well, let's talk about that dichotomy that the district court drew. What's the basis for that? When you look at most of these types of cases, whether it's in New Jersey, around the country, when you're looking at a municipality, it's rare to see that a particular department is focused on because the general allegation is that an entire department, not a subdivision of a department, is the problem. And Judge Fuentes has been focusing on the chief of police, rightly so. What's the basis for that dichotomy that the district court drew, and why shouldn't we say that that's part of the error? The basis of that dichotomy is you can have a two-path track under Ronell. You can have fed or trained or fed or supervised. The plaintiff was not able to point to anything on a day-to-day basis for these complaints against these two officers that could have been done differently. That's why Judge Cooper... But that's actually part of the complaint error, that maybe it shouldn't have been focused just on these two particular officers. If there's a pattern of not watching in general, I mean, I think you're making... At the root, you are making arguments on which a jury could find no liability. But how can you say this is so clear that with this wealth of cases, the judge was entirely appropriate in tossing out two theories and then narrowing down the last theory to just be these two particular officers? It seems like you're invading the jury's province and saying no reasonable jury could have found liability based on this long pattern documented by the state attorney general here. I respectfully disagree, Your Honor. If you look at Judge Irance's opinion in Mermin v. City of Camden, the sheer number of complaints alone without any further context is not a basis to... That is not what this is about. It's not about the sheer number of complaints. And you do have the officers admitting that basically no one was at home and they could do whatever they want because they knew that they weren't being supervised. The problem was that their sergeant was in on the criminal activity. So their on-site supervisor was the one that was also... Who's the sergeant report to? The lieutenant. And we had an expert give an opinion that lieutenants aren't on the street. It's not a national standard. That's not what police departments do. Lieutenants are not typically on the street, and that's not... So that's why they should be excused because they're not on the street to supervise? There's not any type of national standard that says that what Camden was doing was inappropriate. When you have a sergeant engaged in a criminal activity, he's the direct supervisor. How do you prevent that from occurring? I understand that the county prosecutor was appointed to oversee the police department. I understand that the attorney general was also involved in supervising the police department. Don't those two appointments suggest that there's something wrong, something rotten in Denmark? They certainly do, and if you look at what was taking place in early 2008 prior to Mr. Forrest's arrest, those problems were being addressed. Assistant prosecutor Mark Chase testified all of these complaints were being reported, and when they're reported of criminal activity, they go to the prosecutor's office. The prosecutor's office is then investigating, and the investigation from an administrative level has stayed. So at that point, it's the prosecutor's office investigating these matters. And at the time of Mr. Forrest's arrest, there was an active investigation to these officers, and they were pulled off the street shortly after his arrest. So if Camden's hands were tied, they were stayed from doing anything to these officers. They were actually told to back off from the prosecutor's office. Are you familiar with the case Figueroa v. City of Camden? Yes, Your Honor. And Judge Simandl's case? Yes. As I read that, it's frighteningly similar to the case we have here, yet he drew no dichotomy as Judge Kugler did. Maybe you can comment on that since you're familiar with the case. Certainly. In Figueroa, that was about supersession with Arturo Venegas and the problems he was addressing. Mr. Venegas was gone at the time of Mr. Forrest's arrest, so the whole police department, its organization, its structure had changed, and Mr. Venegas had nothing to do with internal affairs. So as far as— We're talking about a relatively short period of time between—I'm so sorry, Venegas? Yes, Arturo Venegas. It's Arturo Venegas' departure and the events in this case, aren't we? It is a relatively short period of time. If you look at the quote from the appellant's brief, it was actually from Judge Simandl quoting the attorney for Mr. Venegas. It wasn't Judge Simandl's actual quote himself. And we're talking about Mr. Venegas speaking of a general lethargy of officers not performing arrests and not being actively engaged enough. These officers actually had the higher numbers in the department. They had a very, very high number of arrests. So the officers he was addressing being lethargic and not doing anything are not these officers. He was talking about officers just sitting in their cars and not doing anything, whereas these officers had a high number of arrests. So on the theory that the district court granted summary judgment, on the theory of Monell liability for failure to supervise, your position is that Camden Police Department was well supervised and that this decision is correct? My position is the plaintiff could not point to any evidence of a failure to supervise on a day-to-day basis, meaning what they could have done differently that would have prevented this activity. That was why Judge Kluge granted summary judgment. Do you mean to say that the filing of 800 complaints alone speaks of a lack of proper supervision in the city of Camden? That's where I cite the Murman decision that these complaints are filed for a number of reasons. It's common in the city of Camden for someone to get arrested to file a complaint against the officer to use that leverage for court. It's just the sheer number that I'm referring to, 800. It's about 300 a year and it's actually not that high for the city of Camden. It's the highest crime rate. It's actually rated the most dangerous city in America quite frequently. So that number of complaints isn't that high for the amount of crime in Camden. Wow. There's lots of arrests on a daily basis. How about the exclusion of evidence post-dating Forrest's arrest? Why couldn't you infer that that evidence would be relevant to the circumstances that Forrest is pointing to? Particularly since there was criminal activity by the individuals here after that date. Because the city of Camden's investigation of these officers was stayed and the prosecutor's office was taking control of investigating these officers. They were told to back off and they were under active investigation. The Beck case is different because in Beck there was more complaints against the officers and the department didn't do anything. In Beck and Pittsburgh, they weren't stayed from investigating. In Camden, they were told to back off because these officers were trying to be caught by the prosecutor's office. The very officers that arrested Forrester themselves were indicted, if I'm not mistaken. Is that correct? They were under active investigation, criminal investigation, at the time of Mr. Forrest's arrest and Camden was not allowed to do anything. And Forrester's own arrest was dismissed or thrown out. Is that also correct? Correct. He pled guilty to the offense. And then when these five officers were indicted, any time that they were the lead officers for arresting someone because it's Brady material, their charges were dismissed. Even if they were actually engaged in criminal activity, when they arrested their lead officer... But we know here they were, but he wasn't, right? Because obviously they admitted... Well, Mr. Forrest, the probable cause for the report was admitted to being wrong from Officer Parry, saying that the PC to get inside the house wasn't actually true, but they do dispute whether he was engaged in drug possession or not. Would not, from just those circumstances, the jury be able to infer that there is a total lack of supervision of the police department? Excuse me, can you repeat that, Your Honor? Would not a jury be able to infer that there is, in fact, a lack of supervision of the Camden Police Department? And that they should therefore be responsible under minority? Well, the problem is these officers were concealing their activities on a day-to-day basis. Their supervisor, the sergeant, was also engaged in the activities. But would proper supervision have disclosed the concealment? That's the issue, that the plaintiff could not prove to what acts would have stopped this activity. So the sergeant's inaction can't be ascribed to the department? It can be ascribed to the department, but the plaintiff was not able to point to what could have been done differently to prevent this. That's why Judge Kluge granted summary judgment. The facts that they say there was no performance evaluations, there actually was. There was a thing called ComStat, where Chief Hargis testified to it. It was the most beneficial thing, where they would bring in all the supervisors, talk about who was doing what, and they did this on a regular basis. The problem is Sergeant Morris was lying. Defer to Ms. Londar. Great, thank you. May it please the Court, Lily Londar, also on behalf of the city of Camden. As Mr. Ibeck noted, I'm here to address point two and four of Appellant's brief. Your negligent supervision, yes? No, so the way that Appellant described it, the Court's constructive dismissal of the negligence claim, and then also point— It's a negligent supervision claim, yes? Oh, yes, yes, I'm sorry, I misunderstood what you were saying. Yes, and then also the issue with the jury charges as well, whichever order the Court would like me to proceed in. Well, help us now. So the judge says the state negligent supervision claim survives at summary judgment, and then makes a statement at the motion in limine, and it disappears. What are we to do with that? It is our position that practically speaking, those two claims, the 1983 claim and the state mock claim, are essentially the same claims. And so practically speaking— You would agree that there are different standards to be applied, there would be a different instruction to be applied, there would be different—because of that different instruction, there would be different considerations for the jury to have on a state negligent supervision claim as opposed to a 1983 claim? I don't believe that the differences would be substantive to these— Okay, Counselor, how about the specific one Ms. Rose raised, which was that the deliberate indifference is a very high mental state required for the federal cause of action. New Jersey law doesn't require deliberate indifference for a negligence claim. The main issue is failure to supervise. So whether or not the city of Camden was delinquent in supervising its officers. So whether it's a negligence claim or 1983 Monel, I don't actually see a substantive difference— The level of notice required for deliberate indifference is much higher than the level of notice required for mere negligence. Am I missing something here? The theory of their case is the same thing. Their theory is that the same— But the quantum of proof—well, the suggestion from the judge is the quantum of proof would be different. If intent is required in one and not in the other, if it's negligent supervision, right, you could put in the same evidence on a claim, right, and it would be violated of one and not of the other. The suggestion is you could have a qualitative difference in the evidence that would satisfy one and not satisfy the other. And doesn't that create prejudice to the plaintiff? I disagree because deliberate indifference does not necessarily require that the city was malicious in any way, that it in any way intentionally deprived appellant of his constitutional rights. Their theory of the case is actually exactly the same as it would be under a state negligence claim, is that there was a failure to supervise vis-à-vis the Internal Affairs Department. So the evidence that was presented— Your colleague said, Judges, look at the quantum of evidence. There's nothing more that we could have done, right? With a state negligence supervision claim, that's not the way you'd look at the evidence, right? You wouldn't look at the evidence in the same way. You'd say, well, wait a minute, the fact that they didn't engage in activity, right, that could satisfy negligent supervision. So the notion that we should look at the two and say, you know, it's essentially the same, can't possibly be right. Well, the evidence that was presented to the jury that the court limited was as it relates specifically to internal affairs investigations. So failure to supervise vis-à-vis the internal affairs process. So that evidence would have been the same regardless of whether you're prosecuting the claim under negligence state law or 19-3-0-now. But the claim of negligence is a straightforward deviation from an accepted standard of care, and it's very fact-driven. Isn't that the sufficient basis to have the jury determine the facts and based on the facts determine that Camden's supervisors were indeed negligence? Negligence. It's a fact-based legal determination. Right, and I understand that. But what I think Appellant is doing is conflating the arguments. The one argument that evidence was improperly excluded because Appellant was not permitted to present to the jury larger evidence of failure to supervise on a day-to-day basis and evidence of failure to supervise through the internal affairs process. And the jury could have determined that the city was negligent in its supervision, failed to supervise, or if it did supervise, it was negligent in doing so. When the court on summary judgment restricted the type of evidence, essentially, that could be presented to the jury and restricted it, essentially, to failure to supervise through IA, by the time that happened, I think that's why the court at the time of motions in limine construed that it's essentially the same theory of liability. That's why it's just really one claim that remains. Isn't that error? To the extent that it can be characterized as error, I think it's harmless error. I don't think it rises to the level of plain error that... I thought that's where we were going to spend most of your presentation. Why don't you tell us what you think it fails in the plain error standard, assuming we think that neither state negligence or the jury charge is preserved. What prongs do you hang your head on? I think practically speaking, there is no... There wouldn't have been a different outcome in terms of different evidence that would have been presented or a different theory of the case. As it relates to... I believe Yonah just asked about the jury charges. Again, the jury charges are the model of Third Circuit jury charges. There was nothing that... Putting aside the issue that trial counsel for appellant appeared to be completely on the same page as defense counsel, that there was no disagreement about... I've spotted you. We're in plain error lane. What part of plain error does it satisfy? Are you hanging your head on just it didn't affect the outcome? Right. So the jury charges... Appellant has not pointed to what should have been different in terms of the jury charges. Does appellant believe that the words failure to investigate should have been used as part of the jury charge? The jury charge specifically instructed the jury to decide whether or not there was a failure to supervise. The appellant presented evidence with respect to failure to supervise through internal affairs. So there's nothing improper about that language. But Flores did present to the judge a negligence claim, didn't he? He did present to the court a negligence claim. Or did he not? That was one of his claims, correct. So additionally with respect to the jury charges, the appellant claims that the court too narrowly defined supervisors and excluded Venegas and Thompson, which from our perspective would have been improper for them to do otherwise considering those two did not testify at trial. So to make it broader than it already was would not have conformed to the actual evidence that was presented to the jury. Further, with respect to... Appellant claims that the charge should have generally referred to CPD. Who would you put in that bucket? Who are the supervisors of the Camden Police Department? Well, at the time we don't dispute that the chief of police was a supervisor. But as it relates to the evidence that was presented with respect to IA, he wasn't involved in that process. Is he a policymaking official? He is. You would say the chief of police as well as internal affairs or just the chief of police? The chief of police is the very top of the police department. Is that accurate? That is correct. So with respect to their claim that it should have been general officers, not just specifically the two officers that were actually indicted and prosecuted for the false arrest, the way that the jury charge was set up was actually in conformity with the law. To do it otherwise would have not comported with the law on point. You can't have general, unnamed officers who did not commit any type of constitutional violation be referred to in the jury charge. It has to specifically be the officers that are responsible for the constitutional violation, which all parties concede were the two officers. There's no dispute about that. But don't they answer to somebody? Don't those two officers answer to somebody within the police department? You told me before that the chief of police is the person at the very top. Sure. So you say that the supervisors have no responsibility for what their subordinates do in the course of their conduct as police officers? No, absolutely not. I don't make that point at all. I'm referring specifically to their argument about the deficiencies in the jury charges. So I think I'm over time. But as it relates to the substance of the jury charge, Appell doesn't point to how it should have been different. And as it was, it was the model third circuit jury charge and it comports with the law. All right, thank you. Mr. Bell? Could you speak to the issue that Judge Beeb has brought up a moment ago on if we're in plain arrow land, as he says, how should we look at it? Your adversary said there's no different outcome. And I wasn't quite sure whether she meant that on the main Monell claim or also on the state negligence claim. So maybe you can address the state negligence claim first. Sure. So I understand your question, the issue of whether there was plain error in the constructive dismissal of the negligence claim. Is that right? Yeah. Yeah, so I think there's a couple things. First, it's plain error because the negligence supervision claim, as we've discussed briefly, it's a different standard. It's a different culpability on the part of the city, a different mens rea. There's also the issue that the negligence supervision and retention claim and the district court excluded evidence of supervision. The district court was extremely focused on just internal affairs and what internal affairs was or wasn't doing. And so in that regard, by dismissing the negligence supervision claim, there's additional error there. Evidence that should have gone to the jury to show the systemic problems with supervision that Camden was facing didn't come in. So in short, why was it plain error to exclude Forrester's negligence claim? It was error. It was plain. It affected the outcome, I assume. Yes, absolutely. The standards are different. It's plain error. It was prejudicial to Mr. Forrest. We've got discretion. Why exercise our discretion? I'm sorry? Step four of a lot of them, make the argument for exercising our discretion to reach out and correct the plain error. This court should correct that error because it prevented Mr. Forrest from being able to show that Camden was negligent, that Camden should have, that there were problems within Camden Police Department. There's a number of those I'd be happy to discuss. Can I just ask on this very point, I presume your point is on negligent supervision, if that had proceeded through, much of the evidence that was excluded in the narrowing of the 1983 claim because of the different standard would have been admitted vis-à-vis the negligent supervision claim. That's right. That's right. So in particular, and I heard Counsel for Camden say repeatedly that Mr. Forrest couldn't point to specific evidence of things that Camden should have done, and that's simply not the case. There's ample evidence that Camden failed to have any sort of performance review system. There's testimony that they didn't do any sort of yearly evaluations, testimony that there's a super session executive in Vegas and no other police department that didn't have evaluations. I heard that 800 complaints is not such a big deal for a city like Camden. Could you respond to that? I find that astounding. I mean, hundreds of complaints year after year after year being filed alleging some very serious misconduct. There were upwards of 100 complaints of excessive force. So if Counsel for Camden wants to argue that to a jury, they're certainly welcome to, but I think that there's at the very least a disputed issue of material fact as to the extensive problems within Camden, the staggering numbers, I think, of police misconduct that, again, were recurring year after year despite the fact that there were recommendations from the Attorney General's Office to make changes. I think... Who do you say is most responsible for the problems that you are referring to? The problems within the Camden PD? Yes. I think the Chief of Police is at the top of the chain of command. And if the argument is he did the best he could, he had his hands full, and he just couldn't do any more with the volume of complaints that the city had? Again, I think that's an argument that can be made to a jury, but there's clearly ample evidence here of things that Camden was not doing. And I didn't hear Counsel for Camden to say Camden did X and Camden did Y and Camden did Z. Is it your view that they did nothing? That is my view that they failed to act. There were any number of things that Camden could have done to create accountability, to be proactive in its management of police conduct, and the record, I think, shows that they failed to do so. Is there anything in the record to show that the narrowing on the 1983 claim that Judge Kudler did was similarly applied to the negligent supervision claim that was allowed to go through at summary judgment? What I mean by that specifically is he narrowed the 1983 claim to internal affairs. Was there a corollary narrowing with regard to the negligent supervision claim? I don't believe that the summary judgment decision narrows the negligent supervision claim in the same way that the Section 1983 claim was narrowed. All right. Thank you very much. Thank you. I think we're good. Thank you. Thank you, counsel, for the case. We'll take the matter under advisement.